### In re O. DUGGAN CO., Debtor.

**Francis J. DUGGAN, Elaine H. Duggan, Mary P. McLaughlin and Paul J. McLaughlin, her husband, Plaintiffs,**

v.

**O. DUGGAN CO., Defendant.**

Bankruptcy No. 82–409.
Adv. No. 82–111.

United States Bankruptcy Court,
D. Delaware.

March 24, 1983.

Melvyn I. Monzack, Francis A. Monaco, Jr., Wilmington, Del., for defendant.

James B. Tyler, III, Georgetown, Del., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

The Debtor, O. Duggan Co., owns two tracts of land in Dewey Beach, Delaware. On Tract I it operates a bar and restaurant known as the Starboard Restaurant and Lounge. There is a two-story frame house on Tract II that is used as a bait and tackle shop and apartment. Debtor filed its Chapter 11 petition on November 4, 1982, four days before a scheduled Sheriff's sale of Tract I at the suit of the Sussex Trust Company.

Robert Gass, his wife Helen and his father Henry are the present owners of all Debtor's issued stock, having bought it from the Plaintiffs in January 1981. When the stock was transferred, the Gasses made a down payment of $50,000, assumed payment of the Sussex Trust mortgage, executed a mortgage individually and for the corporation on Tracts I and II and on a third tract, the property of Henry L. Gass, known as 117 Hickman Street, Rehoboth Beach, Delaware. The Debtor was permitted to defer payments under the Plaintiffs' mortgage throughout the summer season of 1981. Its first payment of $24,672.96 (this amount is 8 times the monthly amortized amount of $3,084.12) was due and made on September 2, 1981. Debtor has made no payments since that time.

The Plaintiffs seek termination of the automatic stay so they can proceed with a foreclosure action against Debtor's property, Tracts I and II and the equipment on that property. Section 362(d) of title 11 provides that relief must be granted (1) for cause or (2) if the Debtor does not have equity in the property and it is not necessary for an effective reorganization. Plaintiffs contend they are entitled to relief under either one of these subsections because (1) their interest in Debtor's property is not adequately protected or (2) the Debtor has no equity in the property and there is no reasonable basis for believing an effective reorganization is possible.

The Plaintiffs' collateral consists of the three tracts of land and the bar/restaurant equipment. The only evidence as to the fair market value of Tract III, the property of Henry Gass, is that of Francis Duggan, one of the Plaintiffs, who estimated its value between $100,000 and $125,000.

Each party presented expert testimony as to the fair market value of Tracts I and II. There was a $125,000 spread between their respective valuations. The lower figure of $300,000 for the property as presently improved is based on the market data approach, an analysis of recent comparable sales of improved commercial property in the Dewey Beach area. The other valuation, $425,000, was reached by the use of incomplete balance sheets, elimination of "not normal operating expenses" and a "should have been profit" for 1981.

Debtor has entered into negotiations with various parties to sell the Starboard for substantially higher figures than $300,000 but it has not been able to bring any of those negotiations to a successful conclusion. From this and the fact that Debtor listed the property for sale at $304,000 after the Plaintiffs and Sussex Trust Company filed foreclosure actions in March 1982, I conclude that the market data approach value of $300,000 is the most reliable.

Francis Duggan, the Plaintiff who operated the bar before selling the corporation's stock, estimated the equipment to be worth approximately $25,000; the Debtor—$40,000. Keeping in mind each party's interest, the mean of $32,500 is its fair value. Thus, the value of property securing Plaintiffs' claim is:

| | |
|---|---|
| Tracts I and II | $300,000 |
| Tract III | 125,000 |
| Equipment | 32,500 |
| | $457,500 |

Debtor's property is encumbered by liens senior to Plaintiffs' mortgage—unpaid real estate taxes for 1981–1982 and the Sussex Trust mortgage on Tract I. The amounts due on senior liens and Plaintiffs' mortgage as of January 13, 1983 are:

**Sussex County Treasury Division**

| | | |
|---|---|---|
| Tract I | $ 2,132.45 | |
| Tract II | 938.40 | |
| November and December interest at 1% per month | 62.30 | |
| | $ 3,178.15 | $3,178.15 |

**Sussex Trust Company**

*First mortgage on Tract I (Starboard)*

| | | |
|---|---|---|
| Principal | $ 63,000.00 | |
| Interest to January 13, 1983 at $21.58 per day | 25,164.67 | |
| Court Costs | 80.45 | |
| | $ 88,245.12 | $88,245.12 |

**Plaintiffs' First Mortgage on Tract II**

*Plaintiffs' Second Mortgage on Tract I*

| | | |
|---|---|---|
| Principal | $281,296.08 | |
| Interest to January 13, 1983 at $77.07 per day | 36,298.92 | |
| Fire and Business Insurance Premiums | 3,440.00 | |
| Court Costs | 250.00 | |
| | $321,285.00 | $321,285.00 |
| | | $412,708.27 |

Notwithstanding a prohibition in Plaintiffs' mortgage against junior liens or encumbrances, the Debtor on March 5, 1982 gave a mortgage to Girard Bank of Delaware. There is a principal balance of $15,000 and approximately $7,000 of unpaid interest due on this mortgage. There are estimated Federal tax liens of $9,000. Thus, Debtor's property is subject to a total of $31,000 in liens junior to Plaintiffs' mortgage.

Debtor contends that the Plaintiffs' interest is adequately protected because the debt is secured not only by property worth more than the amount of the debt but also by insurance coverage.

The Plaintiffs are not adequately protected if the Debtor's property was destroyed by fire. Although the terms of the mortgage require Debtor to fully insure the property against loss due to fire and to carry business interruption insurance, it did not do so. The Plaintiffs were compelled to pay $3,440 for insurance premiums. In November 1982, the Debtor acquired a three month fire insurance policy in the amount of $200,000 on the property. There is no business interruption insurance. If there were a fire, the proceeds of that policy to which Plaintiffs would be entitled, after payment of senior liens, together with the value of Tract # III would be insufficient

to cover the principal balance due on their mortgage, $281,296.08:

| | | |
|---|---|---|
| Insurance Proceeds | | $200,000.00 |
| Taxes | $ 3,178.15 | |
| Sussex Trust | $88,245.12 | 91,423.27 |
| | | 108,576.73 |
| Tract # III | | 125,000.00 |
| | | $233,576.73 |

Assuming no fire, the value of Plaintiffs' collateral exceeds the debt due it on January 13 by $44,791.73:

| | |
|---|---|
| Tracts I and II | $300,000.00 |
| Less senior liens | 91,423.27 |
| | 208,576.73 |
| Tract III | 125,000.00 |
| Equipment | 32,500.00 |
| | 366,076.73 |
| Plaintiffs' Claim as of January 13, 1983 | 321,285.00 |
| | $ 44,791.73 |

Note that in computing the amounts due senior lien holders and Plaintiffs, attorneys' fees have not been included. Under Delaware law, 5% is reasonable but the reasonableness of these fees should be determined by the court having jurisdiction in a particular foreclosure action. However, we will assume 5% is reasonable. Attorneys' fees through January 13, 1983 are $19,996.97. When that amount is added to the respective claims, the value of Plaintiffs' collateral exceeds the debt by only $24,794.76.

Even though the value of collateral exceeds the debt, Plaintiffs are entitled to relief for cause under § 362(d)(1). Interest on the senior liens and Plaintiffs' mortgage are eroding that figure at the rate of $3,031 per month. Debtor is producing no income. Debtor operated during the 1982 season but made no payments to Plaintiffs in over a year. There is nothing in the record to indicate that the summer of '83 would be any different.

Plaintiffs are also entitled to relief under § 362(d)(2). Debtor has no equity in its property valued at $332,500. The liens against it as of January 13 total $443,708.22 ($412,708.27 + $31,000). The property is essential to Debtor's reorganization. But, to continue to enjoy the protection of the stay, Debtor must show there is a reasonable likelihood of a successful reorganization within a reasonable time. It did not establish such a possibility.

Although Debtor grossed approximately $250,000 in 1981, it made no payments on the Sussex Trust mortgage, its withholding taxes of $7,000 for the period ending September 30, 1981 and the 1981–1982 real estate taxes were not paid. Of the three stockholders, it was Robert Gass who took responsibility for the Debtor's business. Yet he was seldom on the premises. He operated and is the president of another business G & G Enterprises. He diverted funds due the Debtor from the rental of the bait and tackle shop to G & G. On one occasion when the restaurant/bar was open for business, there was no management or employees there. During the cleaning/closing process at the end of the '82 season, kitchen items, barware and liquor were unaccountably removed from the premises. Mr. Gass failed to collect and then refused to accept the keys to the Starboard from the person responsible for the cleaning and closing of the business in 1982. The past two years of Robert Gass' absentee supervision indicates that the Starboard cannot be profitably managed for the Debtor in 1983 nor can Debtor satisfy the effective reorganization requirement with a feasible or realistic offer to purchase. None exists. It made no attempt to solve its financial difficulties until just before the Sheriff's sale of Tract I when it filed its Chapter 11 petition. The Debtor's hope that a purchaser may appear with an offer sufficient to support a plan is not enough. There is no realistic hope of selling its property or its stock for enough to cover its debts.

In determining that relief from the stay should be granted, the Debtor's counterclaim in the Plaintiffs' foreclosure action was not overlooked. Nothing in this record supports recission of the sale between Plaintiffs and Debtor nor indicates that damages may be due the Debtor which would negate or diminish the Debtor's obligation to the Plaintiffs. That claim should be resolved in the State foreclosure proceeding.

An order in accordance with this memorandum opinion is attached.